**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

FELICIA KELSO,

                Plaintiff,

v.

TOM VILSACK,[1] Secretary, U.S.
Department of Agriculture

                Defendant.

Civ. Action No. 19-3864 (EGS/ZMF)

---

**<u>MEMORANDUM OPINION</u>**

Plaintiff Felicia Kelso ("Ms. Kelso" or "Plaintiff") brings this lawsuit against Tom Vilsack, Secretary of the U.S. Department of Agriculture ("Defendant") alleging discrimination, retaliation, and a hostile work environment in violation of Title VII of the Civil Rights Act ("Title VII"), Section 501 of the Rehabilitation Act ("Rehabilitation Act"), and the Age Discrimination in Employment Act of 1967 ("ADEA"). *See* Compl., ECF No. 1.[2] On October 13, 2020, this Court referred the case to a Magistrate Judge for full case management, including the preparation of a report and recommendation on dispositive

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current Secretary of the U.S. Department of Agriculture, Tom Vilsack, is substituted as Defendant for the former Secretary of the U.S. Department of Agriculture, Sonny Perdue. *See* Fed. R. Civ. P. 25(d).

[2] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

motions pursuant to Local Civil Rule 72.3. *See* Minute Order (Oct. 13, 2020).

Pending before the Court is Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6), or in the alternative, Motion for Summary Judgment Pursuant to Rule 56(a), ECF No. 9.[3] Magistrate Judge Faruqui issued a Report and Recommendation ("R. & R.") recommending that this Court grant Defendant's Motion to Dismiss. *See* R. & R., ECF No. 19. Ms. Kelso raises several objections to Magistrate Judge Faruqui's R. & R. *See* Pl.'s Obj. to Magistrate Judge's R. & R. ("Pl.'s Objs."), ECF No. 20.

Upon careful consideration of the R. & R., the objections and opposition thereto, the supplemental briefing and applicable law, and the entire record herein, the Court **ADOPTS IN PART** the R. & R., ECF No. 19; and **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss, ECF No. 9.

---

[3] The Court declines to convert Defendant's Motion to Dismiss into a motion for summary judgment. Defendant does not provide any authority asserting that the Court must, and the Court is able to adjudicate the motion to dismiss based on the pleadings and attachments thereto.

I.    **Background**

A. **Factual Background[4]**

This section is largely taken from Magistrate Judge
Faruqui's R. & R. to which Ms. Kelso has articulated no
objection. *See generally* Pl.'s Objs., ECF No. 20.

In March 2013, the United States Forest Service hired Ms.
Kelso, an African American female over the age of forty, as an
Executive Assistant/Staff Assistant in its Office of Human
Resources Management. Compl., ECF No. 1 ¶ 10; *see* Def.'s Mot. to
Dismiss ("Def.'s MTD"), ECF No. 9 at 1. As a military veteran
who suffers from Post-Traumatic Stress Disorder ("PTSD"),
depression, anxiety, chronic migraines, and lumbar strain, Ms.
Kelso was hired as a "30% disabled compensable veteran." Compl.,
ECF No. 1 ¶¶ 6, 11-12. Ms. Kelso maintained her employment at
the agency until February 2015. *See* Def.'s MTD, ECF No. 9 at 1.

From March 2013 to January 2014, Ms. Kelso's schedule
consisted of four 10-hour days per week, during which time she
was "fully successful." Compl., ECF No.1 ¶ 16, 18. Ms. Kelso
suffered a back injury while at work on January 8, 2014. *See id.*
¶ 25.

---

[4] The Court assumes the facts alleged in the complaint to be true
for the purposes of deciding this motion and construes them in
Ms. Kelso's favor. *See Baird v. Gotbaum*, 792 F.3d 166, 169 n.2
(D.C. Cir. 2015).

### 1. Requests for Leave Associated with Back Injury

After her back injury, Ms. Kelso was on medical leave until March 31, 2014. *See id.* ¶ 26. Her doctor indicated that she was to be on leave until March 24, 2024, and she should receive "reasonable accommodations" upon her return and until April 7, 2014. *Id.* ¶ 29. Ms. Kelso's doctor also recommended that she work remotely and only for four hours per day. *Id.* Upon her return, Ms. Kelso requested her start time be adjusted to 7:15 a.m. *See id.* ¶ 36. Ms. Kelso's doctor's note did not account for her leave between March 24 and 31, 2014. *Id.* ¶¶ 29, 34. After being warned that she would be charge Absent Without Leave ("AWOL") for this time, Ms. Kelso supplied Defendant with documentation excusing this absence. *See id.* ¶ 35.

On April 7, 2014, Defendant issued a Letter of Instruction ("LOI") to Ms. Kelso, requiring that she "adhere to normal leave procedures" by submitting a request for leave in advance or within a reasonable time if there was an emergency or unplanned sick leave. *See id.* ¶ 38. The LOI also denied her request to telework full-time, *id.* ¶ 39; and approved her requested schedule of 7:15 a.m. to 11:15 a.m., Def.'s MTD, ECF No. 9 at 22. However, Ms. Kelso asserts that on April 9, 2014, Defendant denied her requested start time of 7:15 a.m. and told her to

choose a start time between 8:00 a.m. and 9:00 a.m. *See* Compl., ECF No. 1 ¶ 42.

## 2. Request for "Stress Break"

On April 28, 2014, Ms. Kelso requested leave from May 12 to May 14, 2014, for a "stress break." *Id.* ¶ 43. Mary Beth Lepore ("Ms. Lepore"), Ms. Kelso's supervisor, denied this request because she was traveling and needed Ms. Kelso in the office those days. *See id.* ¶ 44.

However, on May 12 and 13, 2024, Ms. Kelso was "genuinely sick" and informed an Administrative Support Assistant—who relayed the message to her supervisors—that she would be taking leave. *Id.* ¶ 45. Ms. Kelso was unable to contact her supervisors directly because her supervisors were not in the D.C. Office, and she was having "connectivity issues." *Id.* ¶ 46. Ms. Kelso believed this was an acceptable way to call in sick in "emergency" situations. *Id.* ¶¶ 48, 51. Because she did not follow the proper procedure for calling in sick—and did not have advance leave—Ms. Lepore charged Ms. Kelso as AWOL for these days. *Id.* ¶ 47. Ms. Kelso was charged AWOL for two, 8-hour days even though she was working 4-hour days, *id.* ¶ 49; however, Defendant responds that it corrected this error. Def.'s MTD, ECF No. 9 at 4 n.6.

### 3. Letter of Reprimand

On May 19, 2014, Ms. Lepore issued Ms. Kelso a Letter of Reprimand ("LOR"), alleging that she failed to complete "some" work assignments since 2013. *See* Compl., ECF No. 1 ¶ 54.

### 4. Change of Job Duties

From May 21 to November 30, 2014, Ms. Kelso was on an extended medical leave. *Id.* ¶ 57. To fill Ms. Kelso's absence, Ms. Lepore hired Nicole Lovering ("Ms. Lovering") in November 2014. *Id.* ¶ 58. Ms. Lovering is a white woman in her thirties, and she has no known disabilities. *Id.* When Ms. Kelso returned to work, she began reporting to Mario Troncoso ("Mr. Troncoso") in the Albuquerque office. *Id.* ¶ 59. In early December 2014, Ms. Kelso learned that Ms. Lovering would be handling Ms. Lepore's calendar and travel arrangements and would be the point of contact for Human Resources in Washington, D.C., all duties that she held prior to her extended medical leave. *Id.* ¶ 67. Ms. Lepore reassigned these duties because it was "very important that there be consistency and someone daily, routinely handling the most critical duties." *Id.* ¶ 65. Ms. Kelso asserts that these were duties she could have continued to perform remotely. *Id.* ¶ 66. Ms. Kelso alleges that her duties were reduced to making copies, dropping off packets for signatures, and researching a menu for a team retreat. *Id.* ¶ 69.

### 5. Request for Reasonable Accommodations from Mr. Troncoso

Ms. Kelso alleges that Defendant denied several of her requests for reasonable accommodations for her disability. First, at the end of her extended medical leave, Mr. Troncoso denied her request to return to the hours she worked prior to her January 2014 back injury. *Id.* ¶ 60. Mr. Troncoso reasoned that her schedule had to "mimic [Ms.] Lepore's." *Id.*

Next, Ms. Kelso requested medical leave for an appointment on December 12, 2014. *Id.* ¶ 71. In response, Mr. Troncoso inquired whether the medical appointment was for her work injury, whether she would need an appointment every week, if there was a medical update from her last visit, and if there were any changes from the doctor to her work conditions. *Id.* ¶ 73-75. Thereafter, on December 22, 2014, Ms. Kelso requested eighty hours of advanced sick leave for "rehabilitation and recovery medical treatment." *Id.* ¶¶ 81, 89. When she did not get a response from Mr. Troncoso, Ms. Kelso re-sent her request on January 12, 2015. *Id.* ¶ 90. Mr. Troncoso agreed to "move [her request] along," but ultimately "did not recommend approval of Plaintiff's advance sick leave request." *Id.* ¶¶ 90, 93. Ms. Kelso took Leave Without Pay ("LWOP") for this time. *Id.* ¶ 92.

On a different occasion in late December 2014, Ms. Kelso requested sick leave for a migraine. *See id.* ¶ 83. Mr. Troncoso

responded by "remind[ing Plaintiff] of the call-in procedures" to properly request leave. *Id.* Ms. Kelso alleges that Mr. Troncoso would "become angry" when she took time off work, even when he knew about her appointments. *Id.* ¶ 84.

### 6. Requests to Telework for Inclement Weather

In January 2015, Ms. Kelso requested to telework three times due to inclement weather. *See id.* ¶¶ 103, 111, 118. On January 14, 2015, Mr. Troncoso denied Ms. Kelso's telework request. Again, on January 26, 2015, Mr. Troncoso denied Ms. Kelso's telework request and reminded her that telework was only permissible when there were tasks that could be completed remotely. *Id.* ¶¶ 107-08. Finally, on January 27, 2015, Mr. Troncoso denied Ms. Kelso's third telework request due to inclement weather. *Id.* ¶ 111. Mr. Troncoso reiterated that she did not have an "ad hoc" telework agreement, and once she completed her outstanding tasks, he would consider approving her request. *Id.* ¶ 112. On two out of three of these dates, Mr. Troncoso approved similar requests to telework made by Ms. Lovering. *See id.* ¶¶ 104, 106, 110.

### 7. Interpersonal Experiences with Ms. Lepore and Mr. Troncoso

After she returned to work in December 2014, Ms. Kelso claims that "[Ms.] Lepore said no more than 30 words to [her] and avoided interactions with her." *Id.* ¶ 63. Additionally, Ms.

Kelso alleges that Ms. Lepore ignored her greetings and made her feel "ostracized, disliked, stressed, and anxious." *Id.* ¶ 64. Ms. Kelso asserts that the harassment was so "severe and pervasive" that it caused her to take leave from December 5 to 12, 2014. *Id.* ¶ 70.

Ms. Kelso puts forward several examples of the alleged harassment. During a meeting on January 12, 2015, Ms. Kelso alleges that Mr. Troncoso "belitt[ed] her" by mocking her response to a question. *Id.* ¶ 95. Mr. Troncoso then told Ms. Kelso that her body language indicated she was "checked out," which Ms. Kelso felt was "a comment about her depression and PTSD." *Id.* ¶ 96. Separately, on January 21, 2015, Ms. Kelso felt humiliated when Ms. Lepore sent an email to her, Ms. Lovering, Mr. Troncoso, and others, stating that her work did not "make sense" and was "not helpful." *Id.* ¶ 118-19.

On January 28, 2015, Ms. Lepore emailed Ms. Kelso and Mr. Troncoso alleging that Ms. Kelso had poor job performance and behavior and stating that her "discontent and sullen" appearance "made her colleagues feel uncomfortable." *Id.* ¶ 120. The email further expressed concern over Ms. Kelso's attendance and reiterated that she was expected to be in the office to receive and deliver documents. *Id.* ¶ 120.

On February 2, 2015, Ms. Kelso went on leave "due to exacerbation of her PTSD, anxiety, [and] depression," which Ms.

Kelso claims was caused by "Defendant's ongoing discriminatory and retaliatory harassment." *Id.* ¶ 121.

### B. Procedural Background

Pursuant to Local Rule 72.2, this case was referred to Magistrate Judge Zia M. Faruqui, up to but excluding trial, including the preparation of a R. & R. with respect to any potentially dispositive motions. *See* Minute Order (Jan. 7, 2019). Magistrate Judge Faruqui issued an R. & R. recommending that this Court grant Defendant's Motion to Dismiss. *See* R. & R., ECF No. 19. Plaintiff has raised Objections to Magistrate Judge Faruqui's R. & R, *see* Pl.'s Objs., ECF No. 20; to which Defendant has responded, *see* Def.'s Opp'n to Pl.'s Objs. to R. & R. ("Def.'s Opp'n"), ECF No. 22. While the objections were pending, the parties moved to file supplemental briefing because of intervening authority from the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"). *See* Mot. for Leave to File Suppl. Briefing, ECF No. 25. The objections are now fully briefed, including supplemental briefing, and ripe for adjudication.

## II. Legal Standard

### A. Objections to a Magistrate Judge's Report and Recommendation

Pursuant to Federal Rule of Civil Procedure 72(b), a party may file specific written objections once a magistrate judge has

entered a recommended disposition. Fed. R. Civ. P. 72(b)(1)-(2). A district court "may accept, reject or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). A district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R. & R.] only for clear error." *Houlahan v. Brown*, 979 F. Supp. 2d 86, 88 (D.D.C. 2013) (citation omitted). "Under the clearly erroneous standard, the magistrate judge's decision is entitled to great deference" and "is clearly erroneous only if on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed." *Buie v. D.C.*, No. 16-1920, 2019 WL 4345712, at *3 (D.D.C. Sept. 12, 2019) (citing *Graham v. Mukasey*, 608 F. Supp. 2d 50, 52 (D.D.C. 2009)) (internal quotation marks omitted).

Objections must "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for objection." LCvR 72.3(b). "[O]bjections which merely rehash an argument presented to and considered by the magistrate judge are not 'properly objected to' and are

therefore not entitled to de novo review." *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 8 (D.D.C. 2013) (quoting *Morgan v. Astrue*, No. 08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009)).

### B. Rule 12(b)(6): Failure to State a Claim

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (internal quotation marks omitted).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Schl.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the

12

defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotation marks omitted). In addition, the court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### III. Analysis

Magistrate Judge Faruqui categorized Ms. Kelso's claims as follows: (1) discrimination based on race, disability, and age under Title VII, the Rehabilitation Act, and the ADEA; (2) retaliation under Title VII and the Rehabilitation Act; (3) failure to accommodate Ms. Kelso's disability under the Rehabilitation Act; and (4) hostile work environment under Title VII and the Rehabilitation Act. *See* R. &. R, ECF No. 19 at 8 (citing Compl., ECF No. 1 ¶¶ 126–146. Ms. Kelso articulated no objection to this categorization. *See generally* Pl.'s Objs., ECF No. 20. Magistrate Judge Faruqui recommended granting Defendant's Motion to Dismiss in its entirety. *See* R. & R., ECF

No. 19. The Court examines Ms. Kelso's objections to this recommendation below.

### A. Discrimination Under Title VII, the Rehabilitation Act, and the ADEA

"Under Title VII, the ADEA, and the Rehabilitation Act, the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). Ms. Kelso's discrimination claim arises from six alleged acts by Defendant: (1) denial of telework; (2) denial of her preferred schedule; (3) a charge of AWOL; (4) letters of instruction and reprimand; (5) reassignment of duties to Ms. Lovering; and (6) interpersonal issues with supervisors. *See* R. & R., ECF No. 19 at 10–14.

The R. & R. recommended dismissing Ms. Kelso's discrimination claims largely due to her failure to allege any "objectively tangible harm" resulting from the alleged adverse employment actions. *Id.* at 10–14.[5] After the R. & R. was issued—and after the parties filed their objections thereto—the D.C. Circuit set aside its prior precedent requiring an "objectively tangible harm" to state a claim for discrimination. *See*

---

[5] Finding no adverse employment action, the R. & R. did not reach the question of whether the alleged incidents were "on behalf of" Plaintiff's protected status.

*Chambers*, 35 F.4th at 872. In *Chambers*, the D.C. Circuit held that a plaintiff states a plausible Title VII claim when she alleges that an employer discriminated against her with respect to the terms, conditions, or privileges of her employment. *Id.* (emphasizing the prohibition of *any* discrimination, even "garden variety" discrimination, is "more consistent with the statute's 'intent to strike at the entire spectrum of disparate treatment . . . in employment'").[6] In light of *Chambers*, this Court granted the parties' joint motion for leave to file supplemental briefing in connection with the objections and responses to the R. & R. *See* Minute Order (Sept. 12, 2022); *see also* Def.'s Supplemental Briefing ("Def.'s Supp."), ECF No. 27; Pl.'s Supplemental Briefing ("Pl.'s Supp."), ECF No. 29.

As noted above, the R. & R. concluded that none of the six alleged actions constituted an adverse employment action sufficient to state a claim for discrimination. Ms. Kelso objects to this finding for four of the alleged incidents,

---

[6] Notably, earlier this year, the Supreme Court clarified the standard for when an employer's action constitutes an adverse employment action under Title VII. *See Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). The Court explained that a plaintiff "must show some harm" related to the terms and conditions of her employment, but "need not show that the injury satisfies a significance test." *Id.* at 350. Courts in this Circuit have interpreted this decision as "largely consistent" with the D.C. Circuit's decision in *Chambers*. *See Turner v. Buttigieg*, No. 23-1665, 2024 WL 4346332, at *7 (D.D.C. Sept. 30, 2024); *Hollingsworth v. Vilsack*, No. 23-2427, 2024 WL 4332118, at *8 (D.D.C. Sept. 27, 2024).

including: (1) issuance of the Letter of Instruction and Letter of Reprimand; (2) charge of AWOL; (3) removal of duties; and (4) the denial of advanced sick leave.[7] Ms. Kelso contends that under *Chambers*, the failure to allege a tangible harm is no longer grounds for dismissal of a discrimination claim. Pl.'s Supp., ECF No. 29 at 1–2. Consequently, to the extent the R. & R. concluded that there was no adverse employment action solely because she failed to allege a tangible harm, that conclusion must be rejected.[8] The Court addresses Ms. Kelso's objections, focusing on whether the remaining alleged acts by Defendant meet "the broad definition of 'terms, conditions, or privileges [of employment]' intended by Congress, while also being mindful that ordinary workplace unpleasantness falls outside of Title VII."

---

[7] Ms. Kelso does not object to the R. & R.'s conclusion that the denial of telework, denial of her preferred schedule, and the interpersonal issues do not constitute adverse employment actions. *See* Pl.'s Objs., ECF No. 20. Nor does Plaintiff's supplemental brief regarding *Chambers* argue that *Chambers* requires these claims to survive a motion to dismiss. *See* Pl.'s Supp., ECF No. 29. After reviewing the R. & R. for clear error, the Court concludes that even under *Chambers*, the remaining three incidents do not constitute adverse employment actions.
[8] Ms. Kelso's initial objections argued that Magistrate Judge Faruqui made improper "findings of fact." Pl.'s Objs., ECF No. 20 at 4–8. The Court dismisses this objection as to each of the alleged incidents. Magistrate Judge Faruqui did not make "findings of fact" in the R. & R. Rather, he evaluated whether the facts alleged in the complaint, and the reasonable inferences therefrom, were sufficient to allege an adverse employment action. *See* R. & R., ECF No. 19 at 11–14.

*Bell v. Fudge*, No. 20-2209, 2022 WL 4534603, at *4 (D.D.C. Sept. 28, 2022).

### 1. Letter of Instruction & Letter of Reprimand

The R. & R. concluded that the issuance of the LOI and Letter of Reprimand ("LOR"), do not constitute adverse employment actions because Ms. Kelso does not allege that the letters "resulted in any financial harm or further disciplinary action" or "contained abusive language." R. & R., ECF No. 19 at 12–13. Ms. Kelso argues that the letters affect the terms, conditions, or privileges of her employment because if she failed to comply with the instructions in the LOI or the performance plan in the LOR, her employment with Defendant could be at risk. *See* Pl.'s Supp., ECF No. 29 at 2.

Here, the letters have been incorporated by reference into the Complaint.[9] The LOI, issued to Ms. Kelso on April 3, 2014, denied her request for full-time telework and "stated Plaintiff must adhere to normal leave procedures by submitting a request for approval in advance . . . and within a reasonable time upon

---

[9] The Court may consider these documents because they are plainly referenced in the Complaint and Ms. Kelso necessarily relies on them even though Defendant, rather than Ms. Kelso, produced the documents in the materials attached to its Motion to Dismiss/Motion for Summary Judgment. *See Gebretsadike v. Travelers Home & Marine Ins.*, 103 F. Supp. 3d 78, 82 (D.D.C. 2015). Furthermore, the Court may consider the documents without converting the motion to one for summary judgment. *Gross v. Wright*, 185 F. Supp. 3d 39, 48 (D.D.C. 2016).

return to duty in any emergency or unplanned situations requiring sick leave." Compl., ECF No. 1 ¶¶ 38–39; *see* Decl. of Christian Pagán ("Pagán Decl.), Ex. A, ECF No. 9-2. Further, the LOI made clear that Ms. Kelso's failure to comply with these instructions could lead "to disciplinary action up to and including [her] removal from the Federal Service." Ex. A, ECF No. 9-2 at 25. The LOR, issued on May 19, 2014, addressed allegedly incomplete work assignments from December 2013. *Id.* at 12–13.[10] As with the LOI, the LOR stated: "This reprimand may be counted as a prior offense in determining the appropriate penalty for any future offense. Such an offense may result in more severe penalty, up to and including your removal from Federal Service." *Id.* at 12.

The Court concludes that the letters issued to Ms. Kelso do not constitute adverse employment actions. First, Ms. Kelso cites to no authority supporting her argument that letters of this sort arise to an adverse employment action in a discrimination claim. Rather, she points to cases concerning whether "letters of reprimand [were] sufficiently adverse to support the plaintiff's retaliation claims." *Powell v. Lockhart*, 629 F. Supp. 2d 23, 39 (D.D.C. 2009).

---

[10] It is appropriate for the Court to consider this document for the same reason as explained *supra* n.8.

While Ms. Kelso is correct that "there is no categorical prohibition on the letter of reprimand constituting an adverse employment action," *see Bell*, 2022 WL 4534603, at *6; the court in *Baloch* found a similar letter not "materially adverse"—a less stringent standard than adverse employment action—to plausibly allege a retaliation claim. 550 F.3d at 1199 (noting the letter merely contained "job-related constructive criticism"). The letters given to Ms. Kelso contain similar "job-related constructive criticism," including missed assignments and information regarding Defendant's leave policies. Ex. A, ECF No. 9-2 at 12-13, 25. While the letters indicate that a failure to comply could result in Ms. Kelso's termination, the issuance of the letters did not affect any of the terms, conditions, or privileges of Ms. Kelso's employment. Simply put, nothing in the letters changed the "what, where, or when" of her work with Defendant. *See, e.g.*, *Muldrow*, 601 U.S. at 354. Therefore, this incident fails to allege an adverse employment action.

### 2. AWOL Charge

Ms. Kelso alleges that she was discriminated against when Defendant charged her with AWOL for two days of work—thereby losing sixteen hours of pay—because she "failed to follow [appropriate] procedures" for calling in sick. Compl., ECF No. 1

¶¶ 47–48.[11] Magistrate Judge Faruqui concluded that the charge of AWOL did not amount to an adverse employment action because Ms. Kelso failed to plead any "objectively tangible harm" associated with the AWOL charge. R. & R., ECF No. 19 at 11–12. Again, Ms. Kelso argues that *Chambers* excuses her from the obligation to submit "allegations of concrete or tangible harm." Pl.'s Supp., ECF No. 29 at 2. In response, Defendant merely calls Ms. Kelso's allegation that she was discriminatorily charged AWOL "a closer call," and argues that the AWOL charge did not amount to a "serious hardship." Def.'s Supp., ECF No. 27 at 4.

The Court agrees with Ms. Kelso and concludes that she has sufficiently alleged that the charge of AWOL affected the terms, conditions, or privileges of her employment such that it constitutes an adverse employment action. Charging Ms. Kelso with AWOL affected her ability to utilize her sick leave and affected her pay, clearly altering the terms and privileges of her employment. *See Bell*, 2022 WL 4534603, at *5 (concluding that compensation and vacation time are terms and conditions of employment). Contrary to Defendant's argument, Ms. Kelso is not required to show any "serious hardship" stemming from this

---

[11] Ms. Kelso also alleges that the "AWOL charges were in excess since Plaintiff was only working 4-hour days totaling 8 hours instead of 16 hours." Compl., ECF No. 1 ¶ 49. Defendant notes that the incorrect AWOL charge was later adjusted; however, for the purpose of Defendant's motion to dismiss, the Court takes Ms. Kelso's allegation of sixteen AWOL hours as true.

incident–the change in privilege is harm enough in itself. *See
Muldrow*, 601 U.S. at 355 ("To demand 'significance' is to add
words—and significant words, as it were—to the statue Congress
enacted. It is to impose a new requirement on a Title VII
claimant, so that the law applied demands something more of her
than the law as written."); *Chambers*, 35 F.4th at 872. To the
extent Defendant is arguing that Ms. Kelso's claims are de
minimis because Ms. Kelso was only charged as AWOL for two days,
the Court is unpersuaded. A discriminatory denial of the use of
an employee's benefits and loss of pay, no matter how
significant, is clearly the type of harm meant to be protected
by Title VII. *See Chambers*, 35 F.4th at 875.[12]

To survive a motion to dismiss, however, a plaintiff must
also sufficiently allege that the adverse action was taken
because of the plaintiff's protected status. *See Baloch*, 550
F.3d at 1196. Defendant asserts that Ms. Kelso's AWOL claim
still fails because Ms. Kelso failed to allege a connection
between the charge of AWOL and her disability, age, or race. *See
Def.'s Supp., ECF No. 27 at 4. The Court disagrees.

"One way that a plaintiff can allege a causal connection is
by showing that she was treated differently from similarly

---

[12] To the extent *Muldrow* is interpreted to be a more stringent
test than the one set out in *Chambers*, Ms. Kelso's loss of pay
clearly meet *Muldrow's* "some harm" requirement.

situated employees who are not part of the protected class."
*Tolores Homes v. Austin*, No. 2-2415, 2024 WL 4345829, at *6
(D.D.C. Sept. 30, 2024) (quoting *Brown v. Sessoms*, 774 F.3d
1016, 1022 (D.C. Cir. 2014)) (internal quotations omitted);
*Chambers*, 35 F.4th at 874 ("Discrimination refers to
differential treatment."). Ms. Kelso alleges that there were
three similarly situated employees, none of whom were
"black/African-American, disabled, or engaged in prior protected
activities." Compl., ECF No. 1 ¶¶ 23-24. Further, she alleges
that she was the only employee charged with AWOL during the
relevant period, and "it was accepted for employees to call-in
and ask another employee to connect with their supervisor on
that employee's behalf to request leave"—just as Ms. Kelso
allegedly called in sick for the two days she was charged AWOL.
*Id.* ¶¶ 51-52. If similarly situated employees called in sick in
the same manner and were not charged AWOL, it is reasonable to
infer that Ms. Kelso was charged AWOL due to her race, age, or
disability. Accordingly, Ms. Kelso's allegations of
discrimination based on her AWOL charge survive Defendant's
Motion to Dismiss.

### 3. Removal of Duties

Next, Ms. Kelso claims that Defendant discriminated against
her when Ms. Lepore reassigned some of her main duties to
another employee. *Id.* ¶¶ 65-69. Magistrate Judge Faruqui

concluded that this action did not state an adverse employment action because Ms. Kelso failed to allege that the change in duties resulted in "a change in pay, a reduction in grade level, a loss of benefits, or a change of job title." R. & R., ECF No. 19 at 13. Before *Chambers*, those were the exact changes that courts looked for when examining whether a reduction in responsibilities was an adverse employment action. *See, e.g.*, *Gasser v. Ramsey*, 125 F. Supp. 2d 1, 5 (D.D.C. 2000) (concluding that the plaintiff adequately stated an adverse employment action where plaintiff became ineligible for overtime pay upon being transferred to a new position).

Nonetheless, the removal of Ms. Kelso's main duties represents a change in the "what" included in the terms or conditions of her employment, constituting an adverse employment action. *See Liu v. Georgetown Univ.*, No. 22-157, 2022 WL 2452611, at *5 (D.D.C. July 6, 2022) (concluding that the denial of the opportunity to present research constitutes a "privilege" of employment). Moreover, it is entirely plausible, and reasonable to infer from the Complaint, that Ms. Kelso experienced "some harm" from the removal of duties, including a denial of growth in her role, a loss of prestige, or the potential to be looked over for future employment opportunities. Compl., ECF No. 1 ¶¶ 65-69. Requiring Ms. Kelso to allege a "significant" injury would be beyond what Title VII requires.

*See Muldrow*, 601 U.S. at 355. That this reassignment of duties did not change her title or tangible benefits cannot preclude a claim under Title VII.

Ms. Kelso also sufficiently alleges that the removal was because of her disability. First, she alleges her duties were removed "because it was very important that there be consistency and someone daily, routinely handling the most critical duties," and they were reassigned to another employee who Ms. Kelso alleges did not have a disability and was not a person of color. Compl., ECF No. 1 ¶¶ 23–24, 65. Moreover, given Ms. Kelso's change in work schedule due to her disability, it is reasonable to infer that Defendant's decision to remove the duties was, at least in part, due to her inability to be in the office every day due to her disability. Accordingly, this claim survives Defendant's Motion to Dismiss.

### 4. Advanced Sick Leave

On December 22, 2014, Ms. Kelso requested "80 hours of advanced sick leave for rehabilitation and recovery medical treatment." *Id.* ¶ 89. Ms. Kelso alleges that denial of advanced sick leave "resulted in her taking leave without pay," and was based on "her alleged 'pattern of absence and her inability to earn leave and . . . accrue any leave.'" *Id.* ¶¶ 92–93. The R. & R. analyzed this claim as a request for a reasonable accommodation, *see* R. & R., ECF No. 19 at 18–19; but Ms. Kelso's

objections and supplemental brief claim the denial of advanced
sick leave constitutes an adverse employment action under Title
VII, *see* Pl.'s Objs., ECF No. 20 at 7–8; Pl.'s Supp., ECF No. 29
at 3–4. Defendant's response focuses on Plaintiff's failure to
allege a "significant" financial harm connected to the denial.
*See* Def.'s Opp'n, ECF No. 22 at 22.

Once again, Defendant's argument is now obsolete, and its
supplemental brief fails to provide any authority asserting that
the denial of advanced sick leave and/or being required to take
LWOP does not affect the terms, conditions, or privileges of Ms.
Kelso's employment. Much like Ms. Kelso's claims regarding AWOL,
she alleges that the denial of advanced sick leave resulted in a
loss of pay. Compl., ECF No. 1 ¶ 92. This action has an explicit
effect on the conditions and privileges of Ms. Kelso's
employment, and regardless of the unpaid time alleged, any
discriminatory loss of pay or denial of benefits is precisely
the type of harm Title VII targets. *Greer v. Paulson*, 505 F.3d
1306, 1317–18 (D.C. Cir. 2007).[13]

Accordingly, the Court concludes that the denial of
advanced sick leave here constitutes an adverse employment
action, and this claim survives Defendant's Motion to Dismiss.

---

[13] Defendant's responses to Ms. Kelso's objections to the R. & R.
do not argue that she failed to show that the denial of her
advanced sick leave was because of her disability.

### B. Retaliation Under Title VII and the Rehabilitation Act

"In order to prevail upon a claim of unlawful retaliation, an employee must show she engaged in protected activity, as a consequence of which her employer took a materially adverse action against her." *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (quoting *Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007) (internal quotations omitted)).[14] Concluding that the alleged incidents underlying Ms. Kelso's retaliation claim were the same as the alleged discriminatory incidents, the R. & R. found that Ms. Kelso again "failed to plead an adverse employment action and therefore also fails to state a claim for retaliation." R. & R., ECF No. 19 at 15.[15]

In addition to her objections to the adverse employment action findings, Ms. Kelso argues that the R. & R. failed to consider "direct evidence of retaliation," including Mr. Troncoso's inquiry regarding whether her request for "official time" was related to her Equal Employment Opportunity ("EEO") case. Pl.'s Objs., ECF No. 20 at 8. In response, Defendant argues that Mr. Troncoso's inquiry was "entirely appropriate"

---

[14] Notably, the Court in *Chambers* distinguished discrimination claims from retaliation claims and did not change how courts determine whether an alleged action was "materially adverse" to state a claim for retaliation. *See Chambers*, 35 F.4th at 876–78. Neither party objects to the standard or case law used in the R. & R.
[15] Since the Court concluded that some of the alleged incidents constitute adverse employment actions for discrimination,

and "was not made in connection with any action that could be considered retaliatory against Plaintiff." Def.'s Opp'n, ECF No. 22 at 17.

Regardless of whether each of the alleged incidents are "materially adverse," it is clear to the Court that Ms. Kelso's Complaint fails to allege that any of the incidents were consequences of her EEO activity. "A plaintiff may prove causal relation either through direct evidence or by circumstantial evidence, such as temporal proximity between the protected activity and the adverse employment action." *Lane v. Vasquez*, 961 F. Supp. 2d 55, 67 (D.D.C. 2013). Ms. Kelso initiated contact with the Equal Opportunity Employment Commission ("EEOC") in May 2014 and filed her formal complaint in August 2013. Compl., ECF No. 1 ¶ 13.[16] While she alleges that her supervisors knew of her EEO activity, *see id.* ¶ 14; there are no alleged facts suggesting that the enumerated incidents were because of her EEO activity. Even when the Court looks at the temporal proximity between the incidents and Ms. Kelso's EEO activity, the Court fails to see any plausible connection. In fact, some of the alleged incidents occurred before Ms. Kelso even initiated contact with the EEOC, such as the issuance of

---

[16] While the Complaint states that Ms. Kelso filed her formal EEO complaint in August 2013, which the Court takes as true, taking the other dates in context, it appears as though this is a typo in the Complaint.

the LOI, AWOL charge, denial of her request for full-time telework, and change in her work schedule. *See id.* ¶¶ 27, 44, 47.[17] Without any facts allowing the Court to at least plausibly infer a causal connection between the materially adverse action and her EEO activity, Ms. Kelso's Complaint falls short of stating a claim for retaliation.

Ms. Kelso's argument that Mr. Troncoso's inquiry constitutes direct evidence of retaliation fairs no better. In support of her argument, Ms. Kelso points the Court to *Lane*, 961 F. Supp. 2d at 75, and *Hampton v. Vilsack*, 760 F. Supp. 2d 38, 53 (D.D.C. 2011). In *Lane*, the court found direct evidence of retaliation where there was evidence that the defendant-employer did not want to hire the plaintiff because he filed an EEO complaint. *Lane*, 961 F. Supp. 2d at 75 (denying the defendant-employer's motion for summary judgment). Similarly, in *Hampton*, the plaintiff alleged that he was denied a work assignment "because of his EEO complaint." *Hampton*, 760 F. Supp. 2d at 53 (finding direct evidence and denying the defendant-employer's motion for summary judgment). Here, Ms. Kelso does not allege that Mr. Troncoso's question is tied to any of the alleged incidents in the Complaint. There can be no retaliation claim

---

[17] Ms. Kelso does not argue that the R. & R. missed any alleged incidents that could plausibly state a claim for retaliation. Accordingly, the Court reviews only those enumerated incidents.

where the plaintiff fails to allege an employer took an adverse action.

For these reasons, the Court adopts the R. & R.'s recommendation in part, agreeing with Magistrate Judge Faruqui's recommendation to dismiss Ms. Kelso's retaliation claims.

### C. Failure to Accommodate Under the Rehabilitation Act

Ms. Kelso asserts that Defendant denied her request for four different accommodations: (1) full-time telework; (2) a start time of 7:15 a.m.; (3) a maxiflex schedule; and (4) eighty hours of advanced sick leave. *See* Compl., ECF No. 1 ¶¶ 141–143; R. & R., ECF No. 19 at 16.

"To state a claim for failure to accommodate, a plaintiff must allege facts sufficient to show that (1) he had a disability within the meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of the position with reasonable accommodation; and (4) his employer refused to make such accommodation." *Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 153–54 (D.D.C. 2013) (citing *Gordon v. District of Columbia*, 480 F. Supp. 2d 112, 115 (D.D.C. 2007)). The R. & R. concluded, without objection, that the first two elements are undisputed. R. & R., ECF No. 19 at 16. Magistrate Judge Faruqui further concluded that Ms. Kelso's alleged requests did not amount to denied requests for

reasonable accommodations and recommended dismissal of her failure to accommodate claims. *See id.* at 16–18.

The Court adopts Magistrate Judge Faruqui's conclusions in the R. & R. in part, and grants Defendant's Motion to Dismiss Ms. Kelso's failure to accommodate claims with the exception of Ms. Kelso's claim that she was denied the reasonable accommodation of a maxiflex schedule. The Court addresses Ms. Kelso's objections and Defendant's responses to each alleged failure to accommodate below.

### 1. Full-Time Telework

Magistrate Judge Faruqui concluded that Defendant was not required to grant Ms. Kelso's request for full-time telework because many of her duties admittedly required her to be in the office. *See id.* at 16–17. Ms. Kelso argues that this was an "improper finding of fact" because her Complaint alleged that "she was able to perform the essential functions of her job with [telework]." Pl.'s Objs., ECF No. 20 at 9.

The Court concludes that Defendant's denial of full-time telework does not constitute the denial of a reasonable accommodation. Magistrate Judge Faruqui did not make improper "findings of fact." Rather, he accepted all of Ms. Kelso's allegations as true, made the reasonable inferences therefrom, and determined that she failed to allege that it was unreasonable for Defendant to conclude that at least some of Ms.

Kelso's essential duties could not be performed away from the office. *See* R. & R., ECF No. 19 at 16–17. The Court is not required to accept as true Ms. Kelso's conclusory statements that she could perform all of her duties remotely when "such inferences are unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006). The Complaint clearly establishes that not all of Plaintiff's duties could be done remotely; thus, it was a reasonable conclusion that full-time telework would not be a reasonable accommodation. *See* Compl., ECF No. 1 ¶ 21.

Therefore, the Court adopts Magistrate Judge Faruqui's conclusion that Ms. Kelso failed to state a claim for failure to accommodate based on Defendant's denial of full-time telework.

### 2. Preferred Hourly Schedule

Ms. Kelso's Complaint alleges that Defendant's denial of her requested start time of 7:15 a.m. constitutes a failure to accommodate. *Id.* ¶¶ 36–37. Noting that Defendant gave Ms. Kelso the option of starting at 8:00 a.m. rather than 7:15 a.m., the R. & R. concluded that Ms. Kelso "[did] not allege any facts to suggest that the 8:00 a.m. start time was not a reasonable accommodation or that she refused this option." R. & R., ECF No. 19 at 17. Therefore, there was no failure to accommodate. *Id.* Ms. Kelso objects on the grounds that she did in fact

"characterize[] the 8:00 a.m. start time as a denial of her accommodation." Pl.'s Objs., ECF No. 20 at 10.

The Court concludes that Ms. Kelso's objection is meritless. While there are conflicting alleged facts as to whether Defendant denied Ms. Kelso's request to begin her workday at 7:15 a.m.,[18] the Court agrees with the Magistrate Judge's conclusion that Ms. Kelso failed to allege any facts indicating that a start time of forty-five minutes later was not a reasonable alternative accommodation. "[A]n employer is not required to provide an employee that accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996)). Finding that Ms. Kelso's pleadings fall short, the Court adopts the recommendation that the 8:00 a.m. start time does not constitute a denial of a reasonable accommodation.

---

[18] As the R. & R. notes, the LOI grants Ms. Kelso's request to set her workday to begin at 7:15 a.m. Ex. A, ECF No. 9-2 at 25. However, Ms. Kelso alleges that this request was later denied. Compl., ECF No. 1 ¶ 42. Even though the Court may consider the LOI, *see supra* note 8, the Court takes as true her allegation that this request was later denied. However, notably, "[a]n underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999).

### 3. Denial of Maxiflex Schedule

The R. & R. concluded that Ms. Kelso failed to allege facts supporting a conclusion that her request to return to her pre-injury maxiflex schedule was related to her disability. *See* R. & R., ECF No. 19 at 17–18. Thus, "Defendant's denial of this request was [ ] not a denial of a request for a reasonable accommodation based on Plaintiff's disability." *Id.* at 18. Ms. Kelso objects to this conclusion, arguing that her pleadings "stated that the request was a reasonable accommodation." Pl.'s Objs., ECF No. 20 at 10. In response, Defendant argues this statement is insufficient—that "the claim is properly dismissed without some factual allegation that the request was relevant to a qualified disability." Def.'s Opp'n, ECF No. 22 at 27.

Ms. Kelso's factual allegations are sparse as to her request for a maxiflex schedule. However, Ms. Kelso does allege that she "email[ed] [Mr.] Troncoso requesting reasonable accommodations (5/4/9 Maxiflex schedule with a tour of duty from 6:00 am to 3:30 pm as it was prior to her injury) which [Mr.] Troncoso denied." Compl., ECF No. 1 ¶ 60. Taking Ms. Kelso's allegation that she requested the maxiflex schedule as a reasonable accommodation as true, it is entirely plausible that the email conveyed such. *Evans v. Davis Mem'l Goodwill Indus.*, 133 F. Supp. 2d 24, 28 (D.D.C. 2000) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999))

33

(concluding the important question is whether a defendant "can be fairly said to know of both the disability and desire for an accommodation"). Accordingly, this claim survives Defendant's Motion to Dismiss.

### 4. 80 hours of LWOP

Finally, Ms. Kelso alleges that Defendant's denial of her request for eighty hours of advance sick leave—requiring her to take eighty hours of LWOP—was a failure to accommodate. Noting that plaintiffs often request LWOP as a reasonable accommodation in itself, the R. & R. concluded that Ms. Kelso "fail[ed] to plead any facts to suggest why this grant of LWOP status was anything other than a grant of a reasonable accommodation." R. & R., ECF No. 19 at 18–19. Ms. Kelso objects, arguing again, that Magistrate Judge Faruqui's conclusion was based on improper "findings of fact, and not based on Plaintiff's pleadings." Pl.'s Objs., ECF No. 19 at 11. Further, Ms. Kelso attempts to make a distinction between her leave status being defaulted to LWOP when she was not granted advanced sick leave and the R. & R.'s interpretation that she was "granted" LWOP. *Id.*

The Court agrees with Defendant that this distinction is irrelevant. Again, the issue is not whether Ms. Kelso was granted the exact accommodation she requested, but whether she was denied a reasonable accommodation at all. *See Aka*, 156 F.3d at 1305. Ms. Kelso has failed to plead any facts showing that

defaulting her to LWOP was an unreasonable accommodation. *See*
*Morris v. Jackson*, 994 F. Supp. 2d 37, 47 (D.D.C. 2013) ("The
plaintiff bears the burden to show that the requested
accommodation is reasonable on its face – the sort of
accommodation that normally occurs."). Moreover, Ms. Kelso does
not allege nor cite to any authority that employees are entitled
to advanced sick leave or that other, similarly situated
employees, have been granted advanced sick leave.

Accordingly, the Court dismisses Ms. Kelso's claim that the
denial of advanced sick leave constituted the denial of a
reasonable accommodation.

### D. Hostile Work Environment Under Title VII and the Rehabilitation Act

Recommending dismissal of Ms. Kelso's hostile work
environment claims, Magistrate Judge Faruqui concluded that the
alleged conduct by Defendant did not rise to the level of
"severe or pervasive" conduct required to state a claim. Ms.
Kelso's sole objection to this recommendation is that she
"alleged an objectively hostile work environment" and "whether
[her allegations] rose to the level of a Hostile Work
Environment is a finding of fact not made at the pleading
stage." Pl.'s Objs., ECF No. 20 at 11–12. Magistrate Judge
Faruqui did not, however, make "findings of fact." Rather, he
accepted all of Plaintiff's allegations as true, made the

35

reasonable inferences therefrom, and determined that the facts alleged by Ms. Kelso did not amount to the severe or pervasive behavior required to sustain a hostile work environment claim. *See* R. & R., ECF No. 19 at 19–21. Ms. Kelso's objection is a general objection merely objecting on ground that she did state a claim for relief. Pl.'s Objs., ECF No. 20 at 11–12. Accordingly, the Court reviewed this portion of the R. & R. for clear error. Finding none, the Court adopts Magistrate Judge Faruqui's recommendation to dismiss Ms. Kelso's hostile work environment claims.

## IV.  Conclusion

For the foregoing reasons, the Court **ADOPTS** Magistrate Judge Faruqui's Report and Recommendation in part, ECF No. 19, and **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss, ECF No. 9.  Ms. Kelso may proceed on the following claims: (1) the alleged discriminatory denial of advanced sick leave; (2) the alleged discriminatory removal of duties; (3) the alleged discriminatory AWOL charge; and (4) the alleged denial of a maxiflex schedule as a reasonable accommodation.

In her Objections to the Report and Recommendation and in her supplemental filing, Ms. Kelso requests the opportunity to move to amend her Complaint, if necessary, based on the Court's ruling on her Objections. *See* Pl.'s Objs., ECF No. 20 at 1 n.1; Pl.'s Supp., ECF No. 29 at 4. Defendant does not oppose this

request. *See generally* Def.'s Opp'n, ECF No. 22; Def.'s Supp., ECF No. 27. In view of *Chambers,* and the lack of Defendant's opposition to the request, the Court will allow Ms. Kelso to move to amend her Complaint within 14 days of the issuance of this Memorandum Opinion and the accompanying Order.

A separate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            December 18, 2024**